IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADA M. THIEMS,

                        Plaintiff,                              No. 06:12-cv-00947-HZ

        v.

CAROLYN W. COLVIN,
Acting Commissioner of                       OPINION & ORDER
Social Security,

                      Defendant.

Richard F. McGinty
MCGINTY & BELCHER, ATTORNEYS
P.O. Box 12806
Salem, Oregon 97301

        Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

1 - OPINION & ORDER

Nancy A. Mishalanie
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

HERNANDEZ, District Judge:

Plaintiff Ada Thiems brings this action seeking judicial review of the Commissioner's

final decision to deny disability insurance benefits (DIB). This Court has jurisdiction pursuant to

42 U.S.C. § 405(g). I affirm the Commissioner's decision.

PROCEDURAL BACKGROUND

Plaintiff applied for DIB on April 29, 2008, alleging an onset date of June 15, 2006. Tr.

111-18. Her application was denied initially and on reconsideration. Tr. 65-68, 69-71. On

January 11, 2011, Plaintiff appeared, without counsel but with her husband Kirk Thiems as her

non-attorney representative, for a hearing before an Administrative Law Judge (ALJ). Tr. 47-60.

On January 14, 2011, the ALJ found Plaintiff not disabled. Tr. 24-39. The Appeals Council

denied review. Tr. 5-9.

FACTUAL BACKGROUND

Plaintiff alleges disability based on having rheumatoid arthritis, neck and spine problems,

and thoracic outlet syndrome. Tr. 132. At the time of the hearing, she was fifty-two years old.

Tr. 52. She is a high school graduate and went to a "little bit of college," which she clarified was

beauty school, but she did not complete the course. Tr. 52-53. She has past relevant work

experience as a window assembler, janitor, caregiver, and maid/housekeeper. Tr. 56. Because

the parties are familiar with the medical and other evidence of record, I refer to any additional

2 - OPINION & ORDER

relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).   The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

3 - OPINION & ORDER

impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date through September 30, 2008, her date of last insured. Tr. 29. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of degenerative disc disease of the cervical spine and rheumatoid arthritis, but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 29-30.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c) except that she can only occasionally reach overhead bilaterally and can only occasionally climb ladders, ropes, and scaffolds. Tr. 30. With this RFC, the ALJ determined that Plaintiff is able to perform her past relevant work as a janitor, caregiver, and housekeeper Tr. 32. Additionally, the ALJ alternatively proceeded to step five where he determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as mail clerk, office helper, and folder. Tr. 33. Moreover, the ALJ further alternatively determined that even if Plaintiff were restricted to light exertional work instead of medium work, she would still be able to perform her past relevant

4 - OPINION & ORDER

work as a housekeeper, or any of the three jobs identified at step five as existing in significant

numbers in the economy.  Id.  Thus, the ALJ determined that Plaintiff is not disabled.  Tr. 33-34.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal

quotation marks omitted).  The court considers the record as a whole, including both the

evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v.

Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than

one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591

(internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149,

1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the

court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to fully develop the record, depriving her of

her right to due process and a fair hearing.  She also argues that the ALJ failed to provide

germane reasons for discounting her husband's lay witness statement.

I.  Full & Fair Hearing

The ALJ has a duty to conduct a full and fair hearing. . . . [A]mbiguous
evidence, or the ALJ's own finding that the record is inadequate to allow for
proper evaluation of the evidence, triggers the ALJ's duty to conduct an

5 - OPINION & ORDER

> appropriate inquiry. The ALJ must be especially diligent when the claimant is unrepresented or has only a lay representative[.] . . . A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy.

McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) (footnotes and internal quotation marks omitted). The plaintiff in a disability case is "ultimately responsible for providing the evidence to be used in making the RFC finding." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (citing 20 C.F.R. § 404.1512(c)). "But the ALJ should not be a mere umpire during disability proceedings." Id. (internal quotation marks omitted). "Rather, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Id. (internal quotation marks omitted). This is "especially true" when the claimant is not represented by counsel. Id.

Plaintiff makes four specific challenges to the ALJ's conduct at the hearing. She argues that he failed to fully develop the record because he asked minimal questions at the hearing, did not determine if her husband was a qualified representative, did not explain the significance of her date of last insured, and did not ensure that her representative sufficiently cross-examined the vocational expert.

Before the hearing, the ALJ sent Plaintiff information about the hearing, including the date and time, a summary of the issues that would be addressed, and a citation to the applicable regulations containing the rules for determining disability. Tr. 92-109. Plaintiff was also told that a vocational expert would testify. Id. She received a copy of the letter sent to the vocational expert indicating that the vocational expert's testimony would primarily cover the time period June 15, 2006 through September 30, 2008. Id.; Tr. 107.

At the beginning of the hearing, the ALJ introduced the issues and explained that he had to decide whether Plaintiff was entitled to disability benefits and in doing so, had to "get all the facts that apply" to her claim.  Tr. 49.  He stated that he would base his decision on the exhibits and the testimony presented.  Id.  The ALJ gave Mr. Thiems the opportunity to make opening comments, but Mr. Thiems responded that they would "just go ahead and get right" to answering any questions the ALJ had.  Tr. 50.  The ALJ responded "[o]kay," to which Mr. Thiems replied "I'm new at all this[.]"  Id.  The ALJ then explained how the hearing works:  he would swear witnesses in, he would first ask questions, and then Mr. Thiems would have the chance to ask questions.  Id.  He noted that the same process would apply to the vocational expert.  Id.  He confirmed that Mr. Thiems had "reviewed the disc that we sent you" and he allowed Plaintiff to add a new exhibit into the record.  Id.

The ALJ then swore Plaintiff as a witness and asked questions.  Tr. 51-54.  He initially inquired about such things as her age, marital status, and whether she had children.  Tr. 52.  He asked about her education and whether she could read, write, and perform simple math calculations.  Tr. 53.  He then asked Plaintiff to "[t]ell me in your own words why you feel you're unable to work."  Id.  Plaintiff responded that she

> started getting a lot of pain throughout my body, and I was finding out that as I was starting to do things, every time I would do something, I'd end up at the doctor's with either my back muscles or my neck or my arms and just in a lot of, it came to when I was doing things, the next day I would be down.  And I would be hurting real bad.

Tr. 53-54.  At this point, the ALJ turned the questioning over to Mr. Thiems.  Tr. 54.

Mr. Thiems asked Plaintiff about depression, her ability to do chores, if she had any sleeping problems, and her ability to do go shopping, perform errands, or "anything like that[.]"

7 - OPINION & ORDER

Tr. 55.  He also asked appropriate follow-up questions.  Tr. 54-55.

The ALJ then called vocational expert (VE) Francene Geers as a witness.  Tr. 55.  The ALJ asked the VE to recite Plaintiff's past relevant work, exertional and skill levels, and the corresponding Dictionary of Occupational Titles numbers.  Tr. 55-56.  The ALJ then presented various hypotheticals to the VE.  Tr. 55-58.  He then allowed Mr. Thiems to question the VE. Tr. 58.  At that point, Mr. Thiems asked Plaintiff a question about the length of time she could stand or walk before experiencing pain.  Id.  The ALJ explained that Mr. Thiems was supposed to be questioning the VE, not Plaintiff, but the ALJ acknowledged that the question posed to Plaintiff by Mr. Thiems was relevant and told Plaintiff to go ahead and answer it, which she did. Id.  When she finished her answer, Mr. Thiems stated that he had no more questions and made the further remark that "[n]ow that I understand."  Tr. 59.  He declined the opportunity to make any closing comments.  Id.

In his decision, the ALJ noted that Plaintiff had initially alleged that she was limited by rheumatoid arthritis, neck and spine problems, and thoracic outlet syndrome, and had further stated that it was difficult to perform any activity, suffered from joint pain, and could not lift anymore.  Tr. 30.  But, citing Plaintiff's May 10, 2008 Function Report, the ALJ noted that Plaintiff stated that she spent the day doing household chores, napping, shopping, and using a computer.  Id. (citing Tr. 140-48).  She was also able to clean the dog run, weed outside, and had no problems with personal care.  Id. (citing Tr. 140-48; 156-58).  The ALJ found that Mr. Thiems substantiated that Plaintiff cleaned their home and fixed dinner.  Id. (citing Tr. 159-66; May 11, 2008 Third Party Function Report completed by Mr. Thiems).

The ALJ noted Plaintiff's complaints that her spine is painful, she sleeps poorly, her

8 - OPINION & ORDER

hands are painful and swollen, and she has trouble concentrating.  Tr. 30.  He summarized her

hearing testimony.  Tr. 31.  But, he concluded that while her impairments could be reasonably

expected to cause some of the alleged symptoms, Plaintiff's and Mr. Thiems's statements

concerning the intensity, persistence, and limiting effects of those impairments were inconsistent

with the RFC.  Tr. 31.  The ALJ then explained his conclusion.

   The ALJ cited medical records regarding Plaintiff's neck pain which showed that

although Plaintiff had an epidural steroid injection for left C6 radiculopathy in 2006, the MRI

report indicated mild stenosis at C5-6 and mild impingement at that level.  Tr. 31.  She took three

Vicodin daily as well as Flexeril.  Id.  Also by mid-2006, she had been diagnosed with

"questionable seronegative arthritis" and had morning hand pain and stiffness.  Id.  By mid-2007,

Dr. Bobby Han was assessing "pain in fingers" and had tried Plaintiff on steroids.  Id.  Plaintiff

was swimming for exercise at that point.  Id.  In 2007, Plaintiff, who had been "lifting and

moving," experienced back and groin pain.  Id.  The MRI was unremarkable.  Id.  She was given

steroids and then had a diagnostic "provocative epidural" which showed radiculitis in L4 and L5

on the right side.  Id.  However, she was told to gradually increase her activity and was

prescribed Lyrica.  Id. (citing Tr. 217-24); see also Tr. 217 (noting that she had a successful

response to the steroid injection).

   The ALJ noted that in 2007, the medical records showed that Plaintiff saw practitioners at

the Salem Clinic for a variety of unrelated issues and in August 2007, was noted to have chronic

spine problems and took Vicodin periodically.  Tr. 31.  She complained of low back pain after

doing yard work and washing her car.  Id.  She received an injection of Toradol and Phenergan

and an eight-day course of Decadron.  Id. (citing Tr. 295-354); see also Tr. 330 (noting that she

received this treatment).  The ALJ remarked that in November 2007, Plaintiff suffered a lip laceration while cleaning her dog run.  Id.  The ALJ further commented that in June 2008, Plaintiff went to the emergency room for abdominal pain and was told she may have a kidney stone.  Id.  She did not complain of back or neck pain.  Id.  Finally, the ALJ noted that in 2010, Plaintiff established care with Dr. Craig Anderson, M.D., complaining of right low back and hip pain as well as neck and left arm pain.  Id.  The ALJ commented that Plaintiff told Dr. Anderson that a heating pad and Advil helped with her pain.  Id.  At the time, Plaintiff told Dr. Anderson she was a homemaker and enjoyed painting and art work.  Id. (citing Tr. 519-24).  The ALJ noted that Dr. Anderson assessed Plaintiff with more severe cervical and lumbar spine issues, but, the ALJ explained, these findings existed only after Plaintiff's date of last insured.  Tr. 32.

Plaintiff relies on Widmark to argue that the ALJ's questioning was too limited to satisfy his duty to fully and fairly develop the record.  In that case, the issue was whether the ALJ erred in rejecting a physician's opinion of the plaintiff's ability to do fine manipulation because of a prior thumb injury.  454 F.3d at 1066-69.  The medical opinion at issue conflicted with one offered by a state agency reviewing physician who indicated that the plaintiff had no manipulative limitations.  Id. at 1066-67.  One of the reasons offered by the ALJ in support of his conclusion that the plaintiff had no significant, documented nonexertional limitations was that the plaintiff failed to allege significant problems with his thumb or to indicate that any such problems had interfered with his function in the past.  Id. at 1068.

The court explained that it was unreasonable to infer solely from the plaintiff's failure to mention the injured thumb in his benefits application that it did not hinder his ability to perform fine manipulation.  Id.  Then, the court explained that the unreasonableness was more

10 - OPINION & ORDER

pronounced given the ALJ's duty to fully develop the record when the plaintiff was not

represented at the hearing.  Id. at 1068-69.  The court explained that despite the "gap in the

record[,]" the ALJ never asked the plaintiff specifically about this thumb.  Id. at 1069.  The only

effort the ALJ made was at the first of three hearings when the ALJ asked whether "there [is]

anything else you want to tell me about your health or your working capabilities that you think

might be important for me to know?"  Id.  The court remarked that

> [n]o ALJ could reasonably believe that this single, open-ended question was
> adequate to elicit the sort of information necessary to fully and fairly develop the
> record and to properly protect [the plaintiff's] interests . . . especially [] because an
> unrepresented claimant . . . can hardly be expected to realize a thumb injury is
> relevant to his RFC determination and thus critical to mention.

Id.

Plaintiff argues that in light of Widmark, the limited questioning posed by the ALJ here

was inadequate.  Additionally, she argues that under Widmark, the ALJ erred by failing to

specifically inquire about the limiting effects of her impairments.

Defendant argues that Widmark is distinguishable for two reasons.  First, the record here

shows that the ALJ asked several background questions along with his question about why

Plaintiff thought she was disabled, and more importantly, because in contrast to Widmark, Mr.

Thiems asked several questions about Plaintiff's impairments and their limiting effects.

Second, Defendant notes that the Widmark court held that the ALJ failed to fully develop

the record because there was ambiguity concerning whether the plaintiff had a thumb limitation

and thus, further development of the record as to that impairment was crucial to the disability

determination.  Defendant argues that no such ambiguity exists in this record.  Defendant notes

that significantly, Plaintiff fails to explain what questions the ALJ should have asked or what

11 - OPINION & ORDER

testimony she would have offered if she had been asked more questions.  Because the "duty to

develop the record [] is triggered only when there is ambiguous evidence or when the record is

inadequate to allow for proper evaluation of the evidence[,]" Mayes v. Massanari, 276 F.3d 453,

459-60 (9th Cir. 2001), Defendant argues that the ALJ fully developed the record here in regard

to assessing Plaintiff's limitations.

I agree with Defendant.  Plaintiff filed no reply memorandum here and thus Defendant is

correct that she fails to identify what ambiguity, or "gap in the record" triggered the ALJ's duty to

more fully develop the record or what additional questions should have been asked.  Although

the general, open-ended question asked by the ALJ after his preliminary background questions is

similar to the question the Widmark court found unacceptable and incapable of satisfying the

ALJ's duty to develop the record, the context here distinguishes Widmark from the instant case.

In Widmark, the issue concerned whether the ALJ gave adequate reasons for rejecting a

physician's opinion about a particular impairment.  Here, the issue is more generally whether the

record was fully developed.  Notably, the Widmark court found that the ALJ's open-ended

question was not likely to elicit a response from the plaintiff regarding the particular thumb

impairment because, as the court noted, an unrepresented claimant was not likely to recognize the

significance of the thumb limitation.  But here, the ALJ's question gave Plaintiff the opportunity

to mention every impairment and limitation that was relevant to her claim of disability and no

one particular impairment was at issue.

Most importantly, however, the record here shows that Mr. Thiems asked a number of

questions about Plaintiff's impairments and their limiting effects, from depression to her

activities of daily living.  Apparently, no similar questioning occurred in Widmark.  Accordingly,

12 - OPINION & ORDER

although Plaintiff was represented by a non-attorney who admittedly was unfamiliar with the hearing process, and although the questioning by the ALJ was fairly minimal, the record was sufficiently developed in regard to Plaintiff's limitations and impairments.

Next, Plaintiff argues that the ALJ failed to determine if Mr. Thiems was a qualified representative. The regulations allow for the appointment of a non-attorney representative if the person is "generally known to have a good character and reputation[,]" is "capable of giving valuable help to [the claimant] in connection with [the] claim[,]" and is not disqualified or suspended or prohibited by law from acting as a representative. 20 C.F.R. § 404.1705(b); see also 20 C.F.R. § 404.1707 (agency will recognize a person as the claimant's representative if the claimant signs the appropriate written notice, and, if a non-attorney, the person signs the notice and, if a non-attorney and agrees to be the representative; notice must be appropriately filed).

Plaintiff cites to the Social Security Administration's (SSA) Program Operations Manual System (POMS) and the Hearings, Appeals, and Litigation Law Manual (HALLEX) for the proposition that the ALJ is required to determine if the representative is qualified and is "capable of giving valuable help to the claimant in connection with the claim." Pl.'s Br. at 7. She argues that the ALJ failed to inquire if Mr. Thiems was certified by the SSA to be a representative. She notes that the only evidence in the record regarding Mr. Thiems's qualifications was that he told the ALJ he was "new at all this[.]"

I reject Plaintiff's argument. First, the POMS and the HALLEX "constitute[] agency interpretation[s] that do[] not impose judicially enforceable duties on either [the] court or the ALJ." Lockwood v. Comm'r, 616 F.3d 1068, 1073 (9th Cir. 2010); see also Roberts v. Comm'r, 644 F.3d 931, 933 (9th Cir. 2011) (HALLEX does not carry the force of law and is not binding

13 - OPINION & ORDER

on the agency; court does not review allegations of non-compliance with the HALLEX).

Second, none of the HALLEX sections cited by Plaintiff require the ALJ to inquire as to the quality of the representative chosen by the claimant.  Pl.'s Br. at 7-8.  HALLEX I-2-6-52A, available at 1993 WL 643033, provides that the ALJ will open the hearing with a brief statement explaining how the hearing will be conducted, the procedural history of the case, and the issues involved.[1]  HALLEX I-1-1-1 and I-1-1-2 refer the ALJ to the POMS sections regarding representatives and do not themselves impose obligations on the ALJ.[2]  HALLEX I-2-6-1 generally governs the conduct of the hearing and requires the ALJ to "inquire fully into all matters at issue and conduct the administrative hearing in a fair and impartial manner."[3]

The POMS section cited by Plaintiff, POMS GN 03910.02, B2, repeats the regulation's representative requirements and then notes that the law does not define "valuable help."[4]  The POMS section states that the SSA "presumes that [the] . . . non-attorney representative is . . . capable of giving valuable help, absent evidence to the contrary" and if there "appears to be clear indication that the person . . . does not appear capable of assisting the claimant to any significant extent," the appointment is referred to the Office of General Law in the Office of the General, Representative Conduct and Civil Rights Division.  The POMS further states that the SSA "will

---

[1]  Although not cited by Plaintiff, HALLEX 1-2-6-52B addresses the claimant's representative.  It provides that the ALJ should advise an unrepresented claimant of the right to representation and confirm that the claimant has made an informed choice as to the right to representation.

[2]  http://www.socialsecurity.gov/OP_Home/hallex/I-01/I-1-1-1.html; http://www.socialsecurity.gov/OP_Home/hallex/I-01/I-1-1-2.html.

[3]  http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-6-1.html.

[4]  https://secure.ssa.gov/apps10/poms.nsf/lnx/0203910020#b1

recognize a claimant's appointment of the person as representative, assuming that the other requirements for appointment are fulfilled, unless and until SSA disqualifies or suspends the person." POMS GN 03910.02, B2. The cited POMS section places no affirmative duty on the ALJ to inquire of a representative's qualifications.

Finally, Plaintiff provides no authority for the proposition that the SAA certifies representatives. Rather, the law gave Plaintiff the right to appoint her husband as her non-attorney representative and unless there was a "clear" indication that he could not assist her, the ALJ was obligated to recognize Mr. Thiems as such. Further, nothing in the record shows that Mr. Thiems failed to take the opportunity given to him to offer evidence or to ask appropriate questions. His questions demonstrated an understanding of the relevance of any nonexertional limitations such as depression, and exertional limitations such as the inability to perform chores or the amount that Plaintiff could stand or walk before experiencing pain. The record fails to show that he was unable to properly assist Plaintiff to develop her claims. Rather, he provided valuable help to her. The fact that he might have done more does not show that the ALJ erred in any way regarding Mr. Thiems's status as Plaintiff's non-attorney representative.

Next, Plaintiff contends that the ALJ failed to inform her of the importance of her date of last insured. Plaintiff concedes that because she applied only for DIB, she must show that she is disabled before her date of last insured which is September 30, 2008. She argues, however, that the ALJ had an affirmative duty to explain the significance of that date to her and further, that the ALJ led her and her non-attorney representative astray by asking his first six questions in the present tense and not including the date of last insured in his more general question about why she believed she was unable to work. Plaintiff cites no statute, regulation, or caselaw on the

15 - OPINION & ORDER

issue.  Her only authority is HALLEX I-2-6-52A which, as explained above, is not controlling on

the ALJ.  And, in any event, it is directed to the content of the opening statement and indicates

that the ALJ should give a brief statement of the issues involved.  It does not require the ALJ to

confirm the date of last insured or explain the significance of that date to the claimant.  Rather,

the content of the opening statement is expressly left to the ALJ's discretion.  1993 WL 643033.

 Defendant points to the lack of authority cited by Plaintiff and additionally argues that

although Plaintiff did not explicitly tie her testimony to her date of last insured, the ALJ did not

discount her testimony for this reason.  Instead, he discounted her allegations because they were

inconsistent with the medical record and her daily activities.  As Defendant notes, Plaintiff does

not challenge the ALJ's reasoning in her appeal.  Accordingly, Defendant contends, the ALJ did

not err in failing to specifically inform Plaintiff of the significance of the date of last insured at

the hearing, but even if he did, an explanation of that date would not have changed the ultimate

non-disability outcome.  As a result, any error is harmless.

 I agree with Defendant.  First, the written materials Plaintiff received before the hearing

gave her the citation to the regulations containing the rules for determining disability.  Although

there are many regulations and finding one's way through them can be cumbersome, there is no

dispute that Plaintiff received notice regarding the legal parameters of her claim.  Additionally,

enclosed with those materials was a copy of the letter sent to the VE explaining the relevant time

period and expressly referencing the September 30, 2008 date.

 Second, the present tense questions asked by the ALJ did not mislead Plaintiff.  These

questions concerned background information regarding Plaintiff's age, education, marital status,

and her ability to read, write, and perform simple math.  Although the open-ended question

16 - OPINION & ORDER

asking why she was unable to work could have specifically focused on the time before her date of

last insured, the fact that it did not expressly refer to that date does not render the questioning

vague or inadequate.  It certainly did not preclude Plaintiff from offering testimony regarding the

relevant time period.  Moreover, her response to the question offered a description of her

limitations without regard to a time period.

Third, even if the ALJ's questioning can be said to have violated his duty to fully develop

the record, any error was harmless.  The harmless error standard applies in social security

disability cases, including those in which there is an alleged due process violation.  See Ludwig

v. Astrue, 681 F.3d 1047, 1053-55 (9th Cir. 2012) (ALJ's ex parte communication violated due

process but error was harmless where the record as a whole showed the ALJ's decision would not

have been any different without such communication).  "[A]n ALJ's error is harmless where it is

inconsequential to the ultimate nondisability determination."  Molina v. Astrue, 674 F.3d 1104,

1115 (9th Cir. 2012) (internal quotation marks omitted).  The court looks at each case, examining

"the record as a whole to determine whether the error alters the outcome of the case."  Id.  If there

remains substantial evidence to support the ALJ's ultimate non-disability determination, any error

is deemed harmless and does not warrant reversal.  E.g., id.; Carmickle v. Comm'r, 533 F.3d

1155, 1162 (9th Cir. 2008).

The outcome of this case would not have changed even if the ALJ had expressly directed

Plaintiff's testimony to the period before September 30, 2008.  The ALJ's decision relied on

evidence already in the record concerning that time period, in particular, the medical records and

the Functional Reports submitted by Plaintiff and her husband.  Assuming Plaintiff testified

about her pain and other limiting effects of her impairments that existed before her date of last

insured, the evidence already in the record demonstrated that she regularly engaged in activities inconsistent with disability.  As the ALJ also indicated, the medical records from the relevant time period show some impairment, but neither the objective testing nor the recommended treatment supports a disabling level of impairment.  Thus, regardless of the alleged error, substantial evidence in the record supports the ALJ's conclusion and any alleged error is harmless and does not require reversal.

Finally, Plaintiff argues that the ALJ failed to fully develop the record and provide her with a fair hearing because absent an explanation by the ALJ at the hearing that he is not obligated to accept the most restrictive hypothetical presented to the VE, he "could have" created the impression for Plaintiff and Mr. Thiems that he had determined that Plaintiff was disabled. Pl.'s Br. at 11.  Plaintiff also argues that when the ALJ gave Mr. Thiems the opportunity to inquire of the VE and Mr. Thiems asked Plaintiff a question instead, the ALJ failed to advise Mr. Thiems that he could again question the VE.

At the beginning of the hearing, the ALJ expressly told Mt. Thiems that after the ALJ took the VE's testimony, Mr. Thiems would have the opportunity to question the VE.  Tr. 50. After the ALJ questioned the VE, he gave Mr. Thiems the opportunity to do so.  Tr. 58.  When Mr. Thiems posed a question to Plaintiff instead, the ALJ indicated that the questioning was supposed to be of the VE, but because the question Mr. Thiems posed to Plaintiff was relevant, he instructed Plaintiff to answer it.  Id.  When Plaintiff completed her answer, Mr. Thiems stated that now that he understood, he had no further questions.  Tr. 59.

Although it is not entirely clear what Mr. Thiems meant when he said "[n]ow that I understand," the record shows that the ALJ explained at the start of the hearing that Mr. Thiems

18 - OPINION & ORDER

would have the opportunity to question the VE and did so.  When Mr. Thiems asked a question

of Plaintiff, the ALJ indicated that the question was supposed to be directed to the VE.  That the

ALJ allowed Mr. Thiems to ask Plaintiff an additional question instead did not preclude Mr.

Thiems from continuing to question the VE after Plaintiff completed her answer.  Moreover,

Plaintiff fails to identify what testimony from the VE Mr. Thiems would have elicited or clarified

with his questioning.  The fact that the ALJ did not expressly urge or direct Mr. Thiems to

question the VE at that point did not deprive Plaintiff of a fair hearing.

      Additionally, Plaintiff's argument that the hypotheticals posed to the VE by the ALJ

"could have" created an impression that the ALJ had determined that Plaintiff was disabled fails

to establish harmful error.  The ALJ proceeded, as Plaintiff concedes, in the "familiar" fashion of

posing a series of increasingly restrictive hypotheticals.  Pl.'s Br. at 9.  But, the ALJ clearly

presented these as hypotheticals and gave no indication that he had made any determination of

any of the facts upon which the hypotheticals were based.  That Plaintiff "could have"

misunderstood does not demonstrate a "substantial likelihood of prejudice" from any error.  See

McLeod, 640 F.3d at 887-88 (if harmfulness of error is not apparent from the record, the party

seeking reversal must explain how error caused harm; "[m]ere probability" of prejudice from

error is "not enough"; circumstances of the case must show a substantial likelihood of prejudice

to justify remand)

      In summary, while the ALJ could have conducted the hearing somewhat differently, none

of the conduct Plaintiff challenges deprived Plaintiff of a full and fair hearing, and even if it did,

any error was harmless.

II.  Lay Witness Testimony

19 - OPINION & ORDER

Plaintiff argues that the ALJ erred by not fully crediting the written testimony of Mr. Thiems and selectively "cherry picking" from his Third Party Function Report. The ALJ referred to Mr. Thiems's Report when he noted that Mr. Thiems "substantiated" that Plaintiff cleaned their house and fixed dinner. Plaintiff is correct that Mr. Thiems also reported that she may nap in the afternoon, needed help with heavy lifting (such as mashing potatoes), heaving mixing, and grating cheese, had to rest when vacuuming, had a weak grip, and that her condition affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and use her hands. Tr. 159-66. Plaintiff fails to mention that Mr. Thiems also reported that Plaintiff fixed meals daily, helped take care of their dogs, and was able to clean, do the laundry, and do light yard work. Id. He also reported that she was able to walk and drive a car, that she goes out alone, and that she shops in stores for any items needed as often as needed. Id.

While the ALJ may not mischaracterize evidence to reach a particular conclusion, Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998), the ALJ is not required to discuss the evidence in the detail Plaintiff suggests. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (ALJ need not discuss every piece of evidence in the record.). For a lay witness such as Mr. Thiems, the ALJ must only give reasons germane to the witness to discount the testimony. Molina, 674 F.3d at 1114. However, the ALJ is not required "to discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id.

Here, the ALJ did exactly that. He acknowledged Mr. Thiems's testimony but discounted if for the same reasons that he rejected Plaintiff's testimony: it was inconsistent with the medical

20 - OPINION & ORDER

evidence and Plaintiff's activities.  Tr. 30-32.  These are sufficiently germane reasons to reject

Mr. Thiems's testimony.  That the ALJ expressly referred only to statements supportive of his

conclusion does not demonstrate a mischaracterization of Mr. Thiems's Third Party Function

Report which explained Plaintiff's limitations but also indicated that Plaintiff was still

performing several activities of daily living despite those limitations.   The ALJ did not err.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this _____ day of _____, 2013

_____
Marco A. Hernandez
United States District Judge